UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

YUNIASIH THE, on behalf of herself and others similarly situated,

Plaintiffs,

-v-

HOGSALT, PAY DAY LLC, 79 WALKER STREET RESTAURANT LLC D/B/A AU CHEVAL, 4 CHARLES STREET RESTAURANT LLC D/B/A 4 CHARLES PRIME RIB, PARENT OF HOGSALT LLC, AND UMBRELLA OF HOGSALT INC.

Defendants.

25-CV-6754 (JLR) (RFT)
25-CV-6755 (JLR) (RFT)

**OPINION & ORDER**

---

**INTRODUCTION**

On November 7, 2025, Plaintiff Yuniasih The filed an amended complaint against

Defendants Hogsalt, Pay Day LLC, 79 Walker Street Restaurant LLC d/b/a Au Cheval, 4 Charles

Street Restaurant LLC d/b/a 4 Charles Prime Rib, Parent of Hogsalt LLC, and Umbrella of Hogsalt

Inc. (together, "Defendants"), alleging claims of unpaid overtime, minimum wage violations

based on failure to provide proper written notice of the tip credit and violation of the 80/20

rule, and misappropriation of tips based on participation of non-tipped employees in the tip

pool, all in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law

("NYLL"). (*See generally* ECF 22, First Amended Complaint ("FAC").)[1]  Plaintiff's claims arise from

---

[1]    Citations in this opinion and order are to the docket entries for the case numbered 25-CV-6754 (JLR) (RFT). A similar case involving claims of employment discrimination by the same Plaintiff against overlapping defendants has case number 25-CV-6755 (JLR) (RFT). There is an

her employment as a server at Defendants' restaurant, Monkey Bar. (*See* ECF 37, Defs.' Mem. in Support of Mot. To Compel Arbitration ("Def.'s Mem.") at 7.)

On December 19, 2025, Defendants moved to compel arbitration of the claims against them and to stay proceedings in this matter. (*See id.* at 6.) Pending before the Court is Defendants' fully briefed motion to compel arbitration and stay this case. I have reviewed the parties' filings on the docket. For the reasons set forth below, Defendants' motion to compel arbitration is DENIED and their motion to stay is accordingly DENIED.[2]

## BACKGROUND

### I.    Factual Background

Defendants own and operate Monkey Bar, a restaurant located at 60 East 54th Street, New York, New York. (*See* ECF 22, FAC ¶ 3.) Plaintiff Yuniasih The worked at Monkey Bar as a server from January 2023 through July 2025. (*See id.* ¶ 24.)

In January 2023, as part of Plaintiff's onboarding process, Defendants, through their third-party human resources provider Paylocity Corporation ("Paylocity"), issued Plaintiff unique login credentials to access Defendants' electronic onboarding platform. (*See* ECF 35,

---

identical motion to compel arbitration and to stay that was filed by Defendants at ECF 35 on the docket for 25-CV-6755 (JLR) (RFT). Although the citations in this opinion and order are to the filings on the docket for 25-CV-6754 (JLR) (RFT), the opinion and order applies equally to the motion to compel arbitration and to stay filed at ECF 35 on the docket for 25-CV-6755 (JLR) (RFT).

[2]    Motions to compel arbitration are non-dispositive and therefore within a magistrate judge's purview to "hear and determine" pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a). *See Desarrolladora La Ribera v. Anderson*, No. 24-CV-0067 (LAK) (BCM), 2024 WL 5186600, at *1 n.1 (S.D.N.Y. Dec. 20, 2024); *see also Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 227 n.1 (S.D.N.Y. 2020) (collecting cases), *objections overruled*, 2021 WL 4199912 (S.D.N.Y. Sept. 15, 2021).

Declaration of Susie Winterson in Support of Mot. to Compel Arb. ("Winterson Decl.") ¶¶ 5-10.) Defendants advised Plaintiff that she was required to review and acknowledge receipt of, among other materials, Hogsalt's Mutual Arbitration Agreement (the "Agreement") before she would be able to start work. (*See* ECF 35-2*,* Agreement.) On or about January 24, 2023, Plaintiff accessed the Paylocity onboarding portal using her unique login credentials and reviewed an onboarding packet entitled "HOG_Policies_2022_NYC," which included the Agreement. (*See* ECF 36, Declaration of Grace Thoeny in Support of Mot. to Compel Arb. ("Thoeny Decl.") ¶¶ 4-6; *id*. Ex. A. at 3-52.) The Agreement appeared twice within the onboarding packet and contained conspicuous subheadings, including "Claims Subject to Arbitration" and "Exclusions." (*See id*. Ex. A at 16-18, 47-49.) Defendants represent that each new employee was required to "open, review, and electronically acknowledge" the onboarding documents before progressing to the next step of the onboarding process. (*See* ECF 35, Winterson Decl. ¶ 8.)[3]

On January 24, 2023, Plaintiff electronically signed an acknowledgment of receipt of the onboarding documents, which included specific reference to the Agreement, at 10:30:35 AM CST via IP address 172.58.229.136. (*See id*. ¶ 13; ECF 39, Declaration of Yuniash The in Opp. of Mot. to Compel Arb. ("The Decl.") ¶ 6.) Plaintiff subsequently notified Defendants that she had completed the onboarding process and began her employment with Defendants. (*See* ECF 35, Winterson Decl. ¶ 16.; ECF 39, The Decl. ¶ 6.)

The Agreement states that, "[i]n consideration for Employee's employment by the Company and continued employment, Employee's receipt of compensation and other benefits

---

[3]    Unless otherwise indicated, this opinion and order omits internal quotation marks, citations, and alterations from quoted text.

from the Company, and the Company's agreement herein to arbitrate, Employee agrees to participate in, and be bound by, the procedures set forth in this Agreement." (ECF 35-2, Agreement at 1.) The Agreement broadly covers "any legal or equitable claim, demand, or dispute" relating to or arising from Plaintiff's employment, expressly including claims relating to wages, tips, overtime pay, and improper deductions under any federal, state, or local law. (*Id*.) The Agreement also contains a class and collective action waiver. (*See id*.) By its terms, the Agreement contemplates assent by signature, stating "I HAVE READ, UNDERSTAND AND AGREE TO THE ABOVE ARBITRATION AGREEMENT. PLEASE READ CAREFULLY BEFORE SIGNING," followed by a signature line. (*Id.* at 3.) Plaintiff did not sign the Agreement itself. (*See* ECF 38, Pl.'s Mem. in Opp. to Mot. To Compel Arb. ("Pl.'s Opp.") at 3.)

In late October 2025, after Plaintiff filed this action, Defendants circulated a second, nearly identical arbitration agreement (the "Second Agreement") to their current employees and required them to sign it as a condition of continued employment. (*See* ECF 39, The Decl. ¶ 13; ECF 39-1, Second Agreement.)

II.    **Procedural Background**

Plaintiff filed her initial complaint in this action on August 15, 2025. (*See* ECF 1, Compl.) On November 7, 2025, Plaintiff filed the FAC. (*See* ECF 22, FAC.) This matter was referred to me on March 3, 2026 for general pretrial supervision. (*See* ECF 42, Order of Ref.)

On November 3, 2025, Defendants first moved to stay the case and compel arbitration. (*See* ECF 17, Mot. to Compel ("Defs.' Mot.") Thereafter, the parties agreed to a briefing schedule for a renewed motion to compel arbitration. (*See* ECF 29, Order.) On December 19, 2025, Defendants filed their renewed motion to stay the action and compel arbitration. (*See*

ECF 34, Defs.' Renewed Mot.; ECF 35, Winterson Decl.; ECF 36, Thoeny Decl.; ECF 37, Mot. To

Compel Arb. and Stay Action ("Defs.' Mem.").) On January 16, 2026, Plaintiff filed her

opposition. (See ECF 38, Pl.'s Opp.; ECF 39, The Decl.; ECF 40, Declaration of Michael Digiulio in

Opp. to Mot. To Compel Arb. ("Digiulio Decl.")) On February 6, 2026, Defendants filed their

reply. (See ECF 41, Defs.' Reply Mem. in Further Support of Mot. To Compel Arb. ("Defs.'

Reply").)

**LEGAL STANDARDS**

**I.     Contract Interpretation Is a Matter for the Court**

Under New York law, the interpretation of a contract "is a matter of law for the court to

decide." *Int'l Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002). The Court

must interpret unambiguous contractual provisions based on "their plain and ordinary

meaning," *10 Ellicott Square Ct. Corp. v. Mountain Valley Indem. Co.*, 634 F.3d 112, 119 (2d Cir.

2011) (quoting *Essex Ins. Co. v. Laruccia Constr., Inc.*, 898 N.Y.S.2d 558, 559 (2d Dep't 2010)),

interpreting such terms "in light of common speech and the reasonable expectations of a

businessperson." *Belt Painting Corp. v. TIG Ins. Co.*, 100 N.Y.2d 377, 383 (2003).

**II.     Arbitrability**

The Federal Arbitration Act ("FAA") governs any "contract evidencing a transaction

involving commerce." 9 U.S.C. § 2. An arbitration agreement is "valid, irrevocable, and

enforceable, save upon such grounds as exist at law or in equity for the revocation of any

contract." *Id.* "Before a court may rule on the enforceability or scope of an arbitration

agreement, it must determine the threshold issue whether those questions are for the court or

the arbitrator to decide." *Reid v. Tandym Grp., LLC*, 697 F. Supp. 3d 62, 74 (S.D.N.Y. 2023). "The

5

question whether the parties have submitted a particular dispute to arbitration, i.e., the question of arbitrability, is an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002).

When deciding a motion to compel arbitration, courts apply a standard "similar to that applicable for a motion for summary judgment." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017). Courts consider "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits" and draw all reasonable inferences in favor of the non-moving party. *Id.* A court may compel arbitration only within the jurisdiction where the court is located. *See, e.g.*, *Sea Spray Holdings, Ltd. v. Pali Fin. Grp., Inc.*, 269 F. Supp. 2d 356, 363 (S.D.N.Y. 2003) (noting that "the Court's authority to compel arbitration under [9 U.S.C. § 4] is restricted to arbitration proceedings that occur within this District").

The Second Circuit employs a three-part test for determining arbitrability of federal statutory claims: (1) whether the parties agreed to arbitrate disputes at all; (2) whether the dispute at issue comes within the scope of the arbitration agreement; and (3) whether Congress intended to preclude arbitration of the federal statutory claims at issue. *Daly* v. *Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019). As to the third prong, the Second Circuit has consistently held that FLSA claims are arbitrable and that no contrary congressional command precludes their arbitration. *See Rodriguez-Depena* v. *Parts Authority Inc.,* 877 F.3d 122, 123 (2d Cir. 2017) (holding FLSA claims are subject to arbitration); *Sutherland v. Ernst & Young LLP*, 726

F.3d 290, 295 (2d Cir. 2013) (holding FLSA collective action waiver in arbitration agreement is

enforceable). Accordingly, the analysis here turns on the first two prongs.

"A court presented with a motion to compel arbitration must first establish that an

arbitration agreement exists." *Reid*, 697 F. Supp. 3d at 74. This determination "is governed by

state-law principles of contract formation." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d

Cir. 2019). If a court finds that the parties entered into an arbitration agreement, it must then

determine "whether the dispute at issue comes within the scope of the arbitration agreement."

*Silver v. Nissan-Infiniti LT, LLC*, 724 F. Supp. 3d 217, 222 (S.D.N.Y. 2024) (quoting *ACE Cap. Re*

*Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 28 (2d Cir. 2002)). "A party to an

arbitration agreement seeking to avoid arbitration generally bears the burden of showing the

agreement to be inapplicable or invalid." *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d

Cir. 2010).

"Whether or not the parties have agreed to arbitrate is a question of state contract

law." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012). To form a valid contract

under New York law, "there must be an offer, acceptance, consideration, mutual assent and

intent to be bound." *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 491 F. Supp. 2d 403, 408 (S.D.N.Y.

2007).[4] "A binding contract requires an objective manifestation of mutual assent, through

---

[4]    Although Section 4 of the Agreement contains a choice-of-law provision designating
Illinois law (*see* ECF 35-2, Agreement at 3), no party argued that Illinois law should govern the
interpretation of the Agreement. Defendants briefed the contract issues exclusively under New
York law. (*See* ECF 37, Defs.' Mem. at 7-12.) Plaintiff acknowledged the Illinois choice-of-law
clause but argued that it does not apply to the threshold question of assent, and that in any
event, the laws of Illinois and New York are materially consistent on contract formation. (*See*
ECF 38, Pl.'s Opp. at 6 n.4.) Both parties' briefs assume that New York law controls the assent
analysis, which constitutes the parties' implied consent to the use of New York law to analyze
their arguments. *See Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000)

either words or conduct, to the essential terms comprising the agreement." *Bennett v. Barclays Bank Delaware*, No. 24-CV-6549 (LGS), 2025 WL 2690390, at *3 (S.D.N.Y. Sept. 19, 2025). "Contract formation is governed by an objective rather than a subjective standard." *Id.*

The party seeking to enforce an arbitration agreement bears the burden of proving mutual assent by a preponderance of the evidence*. Wu v. Uber Tech., Inc.*, 43 N.Y.3d 288, 299 (2024). A party may manifest assent "by word, act, or conduct that evinces an intent to contract." *Bazak*, 491 F. Supp. 2d at 408. However, "[t]he conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents." *Schnabel*, 697 F.3d at 120.

Where an arbitration agreement is presented electronically, the Second Circuit has held that "acceptance need not be express, but where it is not, there must be evidence that the offeree knew or should have known of the terms and understood that acceptance of the benefit would be construed by the offeror as an agreement to be bound." *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 704 (2d Cir. 2023). Resolution of the assent requirement thus is informed by whether the offeror clearly warned the offeree that taking a specific action would constitute assent to certain terms. *See Vincent v. Nat'l Debt Relief LLC*, No. 24-CV-440 (LJL), 2024 WL 3344227, at *6 (S.D.N.Y. July 8, 2024).

---

(holding that "[t]he parties' briefs assume that New York law controls, and such implied consent is sufficient to establish choice of law"); *see also Amusement Indus v. Stern*, 786 F. Supp. 2d 789, 795 (S.D.N.Y. 2011) (same).

Courts in this Circuit have recognized that an employee's continued employment can, under certain circumstances, manifest assent to an arbitration agreement. *See Manigault v. Macy's E., LLC,* 318 F. App'x 6, 8 (2d Cir. 2009); *Weiss v. Macy's Retail Holdings, Inc.*, 741 F. App'x 24, 27 (2d Cir. 2018). However, for continued employment to constitute assent, the employee must have received sufficient notice that her continued employment would be construed as agreement to be bound. *See Pelligrino v. Morgan Stanley Smith Barney LLC*, No. 17-CV-7865 (RA), 2018 WL 2452768, at *5 (S.D.N.Y. May 31, 2018) (finding continued employment to be a manifestation of assent where the employer explicitly notified the employee that continuing employment constituted acceptance of an arbitration agreement); *see also Sudakow v. CleanChoice Energy, Inc.*, 153 F.4th 287-88 (2d Cir. 2025) (affirming the district court's finding of no assent where a reasonable person would not have understood the relevant conduct to constitute assent to arbitration). Absent such notice, acknowledgment of receipt of an arbitration agreement, without more, is generally insufficient to establish assent to the terms of the agreement. *See Carter v Ralph Lauren Corp.*, 683 F. Supp. 3d 400, 412-13 (S.D.N.Y. 2023)*; Meeg v. Heights Casino*, No. 17-CV-4059 (NGG) (CLP), 2020 WL 1493658, at *12-15 (E.D.N.Y. Mar. 27, 2020).

## III.    Stays of Court Proceedings Pending Arbitration

When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceedings pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration; rather the FAA compels the court to stay the proceedings. *See Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024); *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015) ("[T]he text, structure, and

underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested.").

The FAA "permits courts to dismiss rather than stay litigation pending arbitration if the party does not request a stay and if all claims in the action will be resolved by arbitration." *Dylan 140 LLC v. Figueroa as Tr. of Bldg. Serv. 32BJ Health Fund*, 982 F.3d 851, 858 n.2 (2d Cir. 2020). Conversely, where a court denies a motion to compel arbitration, no stay is warranted. *See* 9 U.S.C. § 3.

### ANALYSIS

**I.      Plaintiff Did Not Assent to the Agreement**

The parties do not dispute that Plaintiff received the Agreement during her onboarding process, that she electronically signed an acknowledgment of receipt of the Agreement on January 24, 2023, and that she did not sign the Agreement itself. (*See* ECF 37, Defs.' Mem. at 4-5; ECF 38, Pl.'s Opp. at 3.) However, Defendants argue that (1) Plaintiff's acknowledgment of receiving the Agreement constituted assent to the Agreement's terms or, alternatively, (2) Plaintiff was on notice that assenting to the Agreement was a condition of her employment, and Plaintiff assented to the Agreement by working for Defendants for the next two years. (*See* ECF 37, Defs.' Mem. at 8-12; ECF 41, Defs.' Reply at 3-10.)

Plaintiff responds that (1) her acknowledgment of receipt was insufficient to establish assent because the acknowledgment form did not state that signing the acknowledgment constituted agreement to the terms of the Agreement, and (2) Defendants never notified Plaintiff that her employment was contingent on her assent to the Agreement, so that her

continued employment did not manifest assent to the Agreement. (*See* ECF 38, Pl.'s Opp. at 8, 14.) For the reasons set forth below, Plaintiff has the better of this argument.

A.    Plaintiff's Acknowledgement of Receipt Was Not Assent to the Agreement

Under New York law, an acknowledgment of receipt can constitute assent to an arbitration agreement only where the acknowledgment itself contains language indicating that the signatory both received the agreement and agreed to be bound by the terms of the relevant agreement. *Compare Patterson v. Raymours Furniture Co.*, 96 F. Supp. 3d 71, 76 (S.D.N.Y 2015) (holding that signing an acknowledgment of receipt containing the language "and agree to be bound by the terms and conditions [of an arbitration agreement] contained therein" was sufficient to establish assent to the arbitration agreement) *with Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 53-54 (2d Cir. 2022) (holding that assent to an electronically signed acknowledgement of receipt was not sufficient to establish assent to the arbitration agreement) *and Schnabel*, 697 F.3d at 120 (holding that an offeree's passive conduct after receiving arbitration terms was insufficient to establish assent where there was no evidence the offeree knew that his conduct would be construed as agreement to be bound). Where an acknowledgment is limited to confirming receipt, courts have found the acknowledgement insufficient to establish assent. *See Schnabel*, 697 F.3d at 120; *Seltzer v. Clark Assocs.*, No. 20-CV-4685 (AKH), 2020 WL 5525590, at *3-4 (S.D.N.Y. Sept. 3, 2020); *Meeg,* 2020 WL 1493658, at *5.

Plaintiff's acknowledgment of receiving the Agreement is insufficient to establish that she assented to the Agreement. Here, the acknowledgment form Plaintiff signed states only: "Please review and acknowledge receipt of the following policies and signing below," followed

by a list of documents, including the Agreement. (ECF 36, Thoeny Decl. at 3.) The acknowledgment form did not state that signing constituted an agreement to be bound to the terms of the Agreement or any of the documents of which Plaintiff acknowledged receipt. (*See id*.) This acknowledgement is materially distinguishable from acknowledgments that courts have found sufficient to establish assent. *See Vassos v. JP Morgan Chase Bank, N.A*., No. 24-CV-8248 (BMC), 2025 WL 591118, at *3 (E.D.N.Y. Feb. 24, 2025).

Defendants rely heavily on *Palmer v. Starbucks Corp*., 735 F. Supp. 3d 407 (S.D.N.Y. 2024), in which the court enforced an arbitration agreement based on detailed evidence of a digital onboarding process, even where a signed copy of the agreement was not produced. (*See* ECF 37, Defs.' Mem. at 9-10.) However, *Palmer* is distinguishable. There, the plaintiff underwent an online onboarding process that included electronically signing an arbitration agreement by clicking a designated "sign" link. *See Palmer*, 735 F. Supp. 3d at 412, 414. Here, by contrast, during the onboarding process, Plaintiff never signed the Agreement itself, electronically or otherwise. (*See* ECF 38, Pl.'s Opp. at 10.) Accordingly, Plaintiff's acknowledgment of receipt of the Agreement does not establish assent to the Agreement.

B.      Plaintiff's Continued Employment Was Not Assent to the Agreement

Defendants further contend that even if Plaintiff's acknowledgment of receipt and the consideration clause were insufficient on their own to establish assent, Plaintiff's acknowledgment of receiving the Agreement establishes that she was on notice that her employment was contingent on her assent to the Agreement and that her subsequent decision to work for Defendants for more than two years after receiving that notice manifested her assent to the Agreement. (*See* ECF 37, Defs.' Mem. at 11-12; ECF 41, Defs.' Reply at 7-8.)

Plaintiff responds that her continued employment cannot constitute assent, because Defendants never notified her that her employment was contingent on her assent to the Agreement or that continuing to work would be construed as assent to its terms. (*See* ECF 38, Pl.'s Opp. at 12-16.)

Courts in this Circuit have recognized that continued employment can, under certain circumstances, manifest assent to an arbitration agreement. *See Manigault,* 318 F. App'x at 8; *Weiss*, 741 F. App'x at 27. However, for continued employment to constitute assent, the employee must have been on notice that her continued employment would be construed as an agreement to be bound. *See Pelligrino*, 2018 WL 2452768, at \*5; *see also Sudakow,* 153 F.4th at 288. While acknowledgment of receipt of an arbitration agreement may establish that an employee had notice of the terms of the agreement, *see Thomas v. Pub. Storage, Inc.*, 957 F. Supp. 2d 496, 500 (S.D.N.Y. 2013), notice of the terms alone is insufficient. The employee must also have been notified that continued employment would constitute acceptance of those terms. *See Schnabel*, 697 F.3d at 120; *Edmundson*, 85 F.4th at 704.

Defendants did not specifically notify Plaintiff that her employment was contingent on her assent to the Agreement. (*See* ECF 38, Pl.'s Opp. at 14; ECF 39, The Decl. ¶ 7.) Further, neither the Agreement itself nor any of the onboarding communications provided to Plaintiff stated that commencing or continuing employment would constitute assent to the terms of Agreement. Defendants themselves state that Plaintiff "was permitted to begin working for [Defendants]" not based on her assent to the Agreement but based on her "acknowledging receipt of the [Agreement]." (ECF 35, Winterson Decl. ¶ 17.)

13

Each case that Defendants cite for the proposition that continued employment manifests assent is distinguishable; in the cited cases, the employer explicitly notified the employee that continued employment would constitute acceptance of the arbitration agreement, or the agreement provided an opt-out mechanism that put the employee on notice that no action was required to be bound. In *Pelligrino*, the employer sent an email explicitly stating that continued employment without opting out constituted acceptance. *See* 2018 WL 2452768, at *5. In *Manigault*, the employer circulated the arbitration policy with an opt-out form notifying employees that if no action was taken the employee would be covered by the arbitration agreement. *See* 318 F. App'x at 8. In *Patterson*, the employer provided a document stating that the arbitration program was "an essential element of [a] continued employment relationship" and "a condition of . . . employment." 96 F. Supp. 3d at 78. Plaintiff here was asked only to acknowledge receipt of the Agreement; she was never informed that her employment was contingent on her agreeing to arbitrate or that commencing or continuing work would be construed as assent. (*See* ECF 35, Winterson Decl, ¶ 10, 17; ECF 35-2, Agreement; ECF 39, The Decl. ¶ 7.)

Even if Plaintiff had notice of the terms of the Agreement, the Agreement itself does not provide state that assent to the Agreement was a condition of employment. Defendants argue that the Agreement's consideration clause, which states that Plaintiff agrees to arbitrate "in consideration for Employee's employment by the Company and continued employment," was sufficient to put Plaintiff on inquiry notice that the Agreement was a condition of employment. (*See* ECF 41, Defs.' Reply at 6-7.) But as Plaintiff notes, the consideration clause merely describes the consideration exchanged if Plaintiff assented to the Agreement but does not

provide notice that continued employment would constitute such assent. (*See* ECF 38, Pl.'s Opp. at 3-4.)

        C.        The Second Agreement Undermines Defendants' Arguments

Defendants' post-lawsuit conduct further informs the analysis of whether Plaintiff assented to the Agreement. After filing this action, Defendants circulated a second, nearly identical arbitration agreement to their current employees and required them to sign it as a condition of continued employment – something they did not require of Plaintiff during her onboarding in January 2023. (*See* ECF 27, Defs.' Letter at 2; ECF 39-1, Second Agreement.) Defendants characterize the circulation of the Second Agreement as a routine administrative and compliance measure unrelated to this litigation and argue that it has no bearing on whether Plaintiff assented to the original Agreement during her onboarding in January 2023. (*See* ECF 41, Defs.' Reply at 11.) Defendants frame their inability to locate a signed document as a recordkeeping issue rather than an admission that no assent occurred, but their acknowledgment that they have no version of the Agreement signed by Plaintiff is nonetheless consistent with Plaintiff's position that she never signed the Agreement and that no binding arbitration contract was formed. While Defendants' circulation of the Second Agreement is not dispositive, it is consistent with and lends further support to a conclusion that Plaintiff did not assent to the original Agreement.

*****

For the foregoing reasons, Defendants have failed to establish by a preponderance of evidence that Plaintiff assented to the Agreement. Accordingly, Defendants' motion to compel

arbitration is DENIED. Because I find that no agreement to arbitrate was formed, I need not address Plaintiff's remaining arguments regarding the scope of the Agreement.

## II.      The Motion to Stay Is Denied

Because I conclude that Defendants have failed to establish that Plaintiff assented to the Agreement, there is no arbitrable dispute to which the FAA's mandatory stay provision applies. See 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). Accordingly, Defendants' request for a stay of this action pending arbitration is DENIED.

## CONCLUSION

For the foregoing reasons, Defendants' motion to compel arbitration and to stay this action pending arbitration (ECF 34) in case number 25-CV-6754 (JLR) (RFT) is DENIED; for the same reasons, Defendants' motion to compel arbitration and to stay this action pending arbitration (ECF 35) in case number 25-CV-6755 (JLR) (RFT) is DENIED. The Clerk of Court is respectfully requested to terminate ECF 34 on the docket of 25-CV-6754 (JLR) (RFT) and to terminate ECF 35 on the docket of 25-CV-6755 (JLR) (RFT). A separate order shall issue setting an initial case management conference.

DATED:      April 3, 2026
            New York, New York

                                        SO ORDERED.

                                        **ROBYN F. TARNOFSKY**
                                        **United States Magistrate Judge**

16